DEAN M. HOTTLE *v.* BDO SEIDMAN, LLP

BDO SEIDMAN, LLP *v.* DEAN M. HOTTLE
(SC 16941)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued January 14—officially released May 4, 2004

*William J. Wenzel*, for the appellant (Dean M. Hottle).

*Donald E. Frechette*, for the appellee (BDO Seidman, LLP).

*Daniel Blinn* and *F. Paul Bland, Jr.*, pro hac vice, filed a brief for the Trial Lawyers for Public Justice et al. as amici curiae.

KATZ, J. The principal issue raised by these consolidated, certified appeals[1] is whether an arbitration clause, in a contract executed under New York law, is enforceable when it authorizes an arbitration panel consisting solely of directors and partners of one of the parties. We conclude that, under the facts of this case, the arbitration clause is enforceable under New York law and, accordingly, we affirm the judgment of the Appellate Court. *Hottle* v. *BDO Seidman, LLP*, 74 Conn. App. 271, 811 A.2d 745 (2002).

The opinion of the Appellate Court sets forth the following relevant facts and procedural history. "These appeals arise out of a dispute over the payment of compensation between the plaintiff, Dean M. Hottle, a former partner, and the defendant partnership, BDO Seidman, LLP, an accounting firm. After his withdrawal from the firm, the plaintiff initiated judicial proceedings by filing an application for a prejudgment remedy. In response, the defendant filed a motion to stay the court proceedings and an independent action to compel arbitration[2] under §§ 3 and 4 of the [Federal Arbitration Act (arbitration act)].[3] The defendant argued that the

---

[1] We granted the petition for certification to appeal filed by the plaintiff in the first case and the defendant in the second case, Dean M. Hottle, limited to the following issue: "Did the Appellate Court properly conclude that the arbitration clause was enforceable?" *Hottle* v. *BDO Seidman, LLP*, 262 Conn. 950, 951, 817 A.2d 109 (2003).

[2] "In the action to compel arbitration, BDO Seidman, LLP, is the plaintiff and Hottle is the defendant. For convenience, we refer to the parties by their status in the first case, that is, to Hottle as the plaintiff and to BDO Seidman, LLP, as the defendant." *Hottle* v. *BDO Seidman, LLP*, supra, 74 Conn. App. 273 n.1.

[3] Section 3 of the arbitration act provides: "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

plaintiff was obligated to arbitrate his claims pursuant to § 14.8 of the partnership agreement [the parties had executed].[4] The trial court agreed and rendered judgment in favor of the defendant." Id., 273–74. The plaintiff thereafter filed two separate appeals to the Appellate Court, which consolidated the appeals.[5]

Section 4 of the arbitration act provides in relevant part: "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. . . ." 9 U.S.C. § 4.

[4] Section 14.8 of the partnership agreement provides: "Any controversy or dispute relating to this agreement or to the Partnership and its affairs shall be resolved and disposed of in accordance with this section, except that any accounting provided for in this agreement, to be conclusive, shall not be subject to this procedure, but shall be conclusive upon the Partners and the Partners agree and accept to be bound by any such accounting. Any dispute or controversy shall be considered and decided by an arbitration panel consisting of two (2) members of the Board of Directors (other than the Chairman and Chief Executive Partner) selected by the Board of Directors and three (3) Partners from the Partnership's practice offices who are not members of the Board of Directors. The members of the arbitration panel shall be mutually agreed to by the Board of Directors and the parties to the controversy or dispute, provided that no member of the panel shall be from an office in which any complaining Partner was located at the time of the filing of the complaint, nor be otherwise involved in the controversy or dispute. The arbitration panel shall be selected as soon as possible after notice to the Partnership by any Partner that such a controversy or dispute exists. The conduct of the arbitration shall be in accordance with such procedures as the Board of Directors adopts and communicates to the Partners. The vote of a majority of the arbitration panel shall determine the resolution and disposition of any such dispute or controversy. The determination of such arbitration panel shall be conclusive and binding on all the Partners, and shall not be subject to further determination in any type of proceeding within or without the Partnership."

[5] "We note that, under Connecticut law, the trial court's ruling to compel arbitration is a final judgment. *Success Centers, Inc.* v. *Huntington Learning*

On appeal to the Appellate Court, the plaintiff argued that the arbitration clause of the partnership agreement was unenforceable because it did not provide for a neutral third party decision maker. Specifically, the plaintiff contended that § 14.8 of the partnership agreement does not qualify as an agreement for "arbitration" because it provides for an arbitral panel consisting entirely of five partners from the defendant accounting firm.[6] The defendant argued, in response, that the arbitration clause is not invalid simply because it authorizes adjudication by the defendant's partners, and further, that the plaintiff knowingly agreed to the terms of the arbitration clause and, therefore, cannot now seek to avoid enforcement of those terms. Id., 275.

The Appellate Court, noting that the partnership agreement contains a provision that the agreement "shall be governed" by New York law;[7] id., 275 n.6; proceeded to construe that agreement under a plenary standard of review. Id., 275, citing *805 Third Avenue Co.* v. *M.W. Realty Associates*, 58 N.Y.2d 447, 451, 448 N.E.2d 445, 461 N.Y.S.2d 778 (1983). The court first determined that the partnership agreement " 'involves commerce' " and is therefore governed by the arbitration act. *Hottle* v. *BDO Seidman, LLP*, supra, 74 Conn. App. 276. Applying the arbitration act, the court determined that it was required to resolve two issues: "(1) whether the parties agreed to arbitrate, and (2) whether

*Centers, Inc.*, 223 Conn. 761, 768–69, 613 A.2d 1320 (1992); see also *Travelers Ins. Co.* v. *General Electric Co.*, 230 Conn. 106, 107–108, 644 A.2d 346 (1994). The arbitration act has not been held to supersede state procedural laws. *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 477 n.6, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989)." *Hottle* v. *BDO Seidman, LLP*, supra, 74 Conn. App. 274 n.4.

[6] The arbitrators are selected from a pool of partners from the defendant's offices located throughout the United States. *Hottle* v. *BDO Seidman, LLP*, supra, 74 Conn. App. 275 n.5.

[7] Section 16.9 of the partnership agreement provides: "This agreement, its validity, construction, administration and effect, shall be governed by and construed in accordance with the laws of the State of New York."

the agreement was enforceable." Id., 277. The court answered both questions in the affirmative. Id., 278, 283.

In concluding that the parties had agreed to arbitrate, the court first noted that the partnership agreement had been executed pursuant to New York law and, under the laws of that state, the parties properly had entered into an agreement to arbitrate. The court further noted that it was uncontroverted that the underlying dispute fell within the scope of § 14.8 of the partnership agreement. Id., 277–78.

Turning to the enforceability of the arbitration clause, the court noted that, "[a]lthough the requirement of a neutral arbitrator has often been stated . . . the parties have not cited, and we have not found, an authoritative definition of the requisite neutrality." (Citations omitted.) Id., 278. Accordingly, the court held, "[a]s a matter of first impression . . . that neutrality requires an absence of structural bias that demonstrates probable partiality in favor of one of the parties to the dispute." Id. In arriving at the "structural bias" standard, the court relied on federal cases that, within the context of claims brought under the arbitration act, had "phrased the need for neutrality in terms of 'institutional bias' and 'evident partiality.' " Id.; see id., 279, citing *Harter* v. *Iowa Grain Co.*, 220 F.3d 544, 553 (7th Cir. 2000); *Scott* v. *Prudential Securities, Inc.*, 141 F.3d 1007, 1015 (11th Cir. 1998), cert. denied, 525 U.S. 1068, 119 S. Ct. 798, 142 L. Ed. 2d 660 (1999); see also *Andersons, Inc.* v. *Horton Farms, Inc.*, 166 F.3d 308, 325 (6th Cir. 1998).

In specific, the Appellate Court relied on two federal cases discussing structural bias in a manner that it found informative. *Hottle* v. *BDO Seidman, LLP*, supra, 74 Conn. App. 279, citing *Rosenberg* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1 (1st Cir. 1999), and *Woods* v. *Saturn Distribution Corp.*, 78 F.3d 424

(9th Cir.), cert. dismissed, 518 U.S. 1051, 117 S. Ct. 30, 135 L. Ed. 2d 1123 (1996). The Appellate Court read those cases, and the other federal cases cited, as holding "that a structural linkage of the arbitration panel to one side of the dispute does not prove a violation of § 10 (a) (2) [of the arbitration act]. Industry relationships may demonstrate an appearance of bias, but do not in and of themselves establish 'evident partiality.' " *Hottle* v. *BDO Seidman, LLP*, supra, 281. Therefore, the court concluded: "The plaintiff has not demonstrated the likelihood of any significant financial incentive that would, in fact, influence present partners as potential arbitrators. Unsurprisingly, before the selection of the arbitral panel, it is difficult to present any such evidence. At this juncture, the plaintiff's claims demonstrate nothing more than an appearance of bias and that is not enough to demonstrate structural bias." Id.

In so concluding, the court found distinguishable cases wherein courts had refused to enforce arbitration provisions on the ground of unconscionability in the form of "unequal economic power and difference in sophistication between the contracting parties." Id., 282, citing *Murray* v. *United Food & Commercial Workers International Union*, 289 F.3d 297, 302–303 (4th Cir. 2002); *Hooters of America, Inc.* v. *Phillips*, 173 F.3d 933, 938–40 (4th Cir. 1999). Finally, the court acknowledged that a partnership and its partners generally share the same legal identity under New York law, but declined to apply that general rule to the present case to view the defendant as the arbitrator of its own disputes. *Hottle* v. *BDO Seidman, LLP*, supra, 74 Conn. App. 282–83.

On appeal to this court, the plaintiff claims that the Appellate Court improperly concluded that § 14.8 of the partnership agreement is an enforceable arbitration clause. Essentially, the plaintiff claims that New York law controls the validity and construction of the part-

nership agreement, and that, under New York law, the arbitration clause is: (1) illusory and contrary to public policy because it, in effect, authorizes the defendant to arbitrate its own dispute; and (2) "so grossly unfair and one-sided" that it is substantively unconscionable. Although we agree that New York law controls the validity and construction of the partnership agreement, we reject the plaintiff's claims and, accordingly, affirm the judgment of the Appellate Court, albeit on somewhat different reasoning.

First, because the plaintiff's claim that the arbitration clause is unenforceable rests upon principles applicable to all contracts generally, we conclude that our determination of that claim is controlled by state contract law, rather than by federal case law construing the arbitration act. Next, we conclude, in accordance with the partnership agreement, that New York law controls, and therefore we apply New York law to resolve the plaintiff's claims. Specifically, we conclude that the arbitration clause is neither illusory under New York law nor contrary to the public policy of that state because the defendant's partners are neither legally equivalent to the defendant nor so identified with the defendant that the law should presume, in advance, that they are incapable of conducting a fair and impartial adjudication of the underlying dispute. In addition, we conclude that the arbitration clause is not so skewed in the defendant's favor as to be unconscionable as a matter of law.

I

At the outset, we must first determine whether federal law or state law applies to determine the enforceability of the arbitration clause in the present case. " 'Arbitration is essentially a creature of contract, a contract in which the parties themselves charter a private tribunal for the resolution of their disputes.' *[In*

*the Matter of Astoria Medical Group]*, 11 N.Y.2d 128, 132–33, 182 N.E.2d 85, 227 N.Y.S.2d 401 (1962) . . . ." (Citations omitted.) *Levine* v. *Advest, Inc.*, 244 Conn. 732, 744–45, 714 A.2d 649 (1998). "Arbitration agreements are contracts and their meaning is to be determined . . . under accepted rules of [state] contract law . . . ." (Internal quotation marks omitted.) Id., 745, quoting *Cowen & Co.* v. *Anderson*, 76 N.Y.2d 318, 321, 558 N.E.2d 27, 559 N.Y.S.2d 225 (1990); see also *Mastrobuono* v. *Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62–63, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995).

"Judicial construction of an arbitration agreement, however, is not guided solely by the principles of relevant state contract law. The arbitration act; 9 U.S.C. §§ 1 through 16; governs written arbitration agreements that pertain to contracts involving interstate commerce.[8] 9 U.S.C. §§ 1 and 2. The arbitration act creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [a]ct . . . . *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Junior University,* [489 U.S. 468, 475, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989)]; *Moses H. Cone Memorial Hospital* v. *Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). As federal substantive law; *Moses H. Cone Memorial Hospital* v. *Mercury Construction Corp.*, supra, 24; the arbitration act is to be applied by state courts as well as by federal courts. *Allied-Bruce Terminix Cos.* v. *Dobson*, 513 U.S. 265, 271–72, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995); *Southland Corp.* v. *Keating*, 465 U.S. 1, 15–16, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984); see *Volt Information Sciences,*

---

[8] The Appellate Court determined that the partnership agreement was a written contract involving interstate commerce. *Hottle* v. *BDO Seidman, LLP*, supra, 74 Conn. App. 276. That determination is not disputed by the parties.

*Inc.* v. *Board of Trustees of Leland Stanford Junior University,* supra, 476 (arbitration act requires state court, in applying general state law principles of contract interpretation, to give due regard to federal policy favoring arbitration).

"The purpose of the arbitration act is to ensure that private agreements to arbitrate are enforced according to their terms. *Mastrobuono* v. *Shearson Lehman Hutton, Inc.,* supra, 514 U.S. 53–54; *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Junior University,* supra, 489 U.S. 479. The arbitration act establishes a strong federal policy favoring arbitration. *Moses H. Cone Memorial Hospital* v. *Mercury Construction Corp.,* supra, 460 U.S. 24–25; see also *Thomas James Associates, Inc.* v. *Jameson,* 102 F.3d 60, 65 (2d Cir. 1996); *New York* v. *Oneida Indian Nation of New York,* 90 F.3d 58, 61 (2d Cir. 1996). [W]hen Congress passed the [a]rbitration [a]ct in 1925 . . . [i]t intended courts to enforce [arbitration] agreements into which parties had entered . . . and to place such agreements upon the same footing as other contracts . . . . *Allied-Bruce Terminix Cos.* v. *Dobson,* supra, 513 U.S. 270–71; *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Junior University,* supra, 474; *Shearson/American Express, Inc.* v. *McMahon,* 482 U.S. 220, 225–26, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987)." (Internal quotation marks omitted.) *Levine* v. *Advest, Inc.,* supra, 244 Conn. 747–48.

"When a dispute that is covered by an arbitration agreement arises, and a party to the arbitration agreement fails, neglects or refuses to submit to arbitration, the party seeking arbitration may petition a federal or state court for an order compelling arbitration. . . . Section 4 of the arbitration act provides that the court shall hear the parties, and, upon being satisfied that neither the making of a covered arbitration agreement, i.e., a written arbitration agreement pertaining to a con-

tract involving interstate commerce, nor the defendant's failure to comply with that agreement is in dispute, the court shall issue an order directing the parties to proceed to arbitration in accordance with the terms of their arbitration agreement." (Citations omitted.) Id., 748–49; see also 9 U.S.C. § 4.

Section 2 of the arbitration act provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[9] The United States Supreme Court has interpreted the text of § 2 to allow the application of state law "*if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. . . . Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Doctor's Associates, Inc.* v. *Casarotto,* 517 U.S. 681, 686–87, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996).

"Accordingly, while the [arbitration act] creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [a]ct . . . in evaluating whether the parties have entered into a valid arbitration agreement, the court must look to state law principles." (Citations omitted; internal quotation marks omitted.) *Cap Gemini Ernst & Young, U.S., LLC* v. *Nackel,* 346 F.3d 360, 364 (2d Cir.

---

[9] Section 2 of the arbitration act provides: "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

2003); see also *Alexander* v. *Anthony International, L.P.*, 341 F.3d 256, 264 (3d Cir. 2003) (applying "relevant state law of contracts" in making determination on enforceability of arbitration agreement); *Ingle* v. *Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (applying California law concerning unconscionability to determine enforceability of arbitration agreement that was subject to arbitration act), cert. denied, 540 U.S. 1160, 124 S. Ct. 1169, 157 L. Ed. 2d 1204 (2004). "As a result, prior to compelling arbitration, the [trial] court must first determine two threshold issues that are governed by state rather than federal law: (1) Did the parties enter into a contractually valid arbitration agreement? and (2) If so, does the parties' dispute fall within the scope of the arbitration agreement?" *Cap Gemini Ernst & Young, U.S., LLC* v. *Nackel*, supra, 365; see also *Lyster* v. *Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001) ("[a] dispute must be submitted to arbitration if there is a valid agreement to arbitrate and the dispute falls within the scope of that agreement"); *Floss* v. *Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 311–12 (6th Cir. 2000) (considering "whether the parties have executed a valid arbitration agreement and, if so, whether the [underlying] statutory claim falls within the scope of that agreement"); *John Hancock Mutual Life Ins. Co.* v. *Olick*, 151 F.3d 132, 137 (3d Cir. 1998) (trial court must determine "whether the parties entered into a valid arbitration agreement in the first instance, and whether the specific dispute raised falls within the scope of that agreement").

In the present case, it is uncontroverted that the underlying dispute falls within the scope of the arbitration agreement, thus satisfying the second prong of the test compelling arbitration. See *Cap Gemini Ernst & Young, U.S., LLC* v. *Nackel*, supra, 346 F.3d 365. Therefore, the focus of our inquiry is solely on the first prong, that is, whether the parties have entered into a contrac-

tually valid arbitration agreement. See id. The plaintiff claims that the arbitration clause is not contractually valid because it fails to provide for a "neutral third party arbitrator"[10] and, essentially, enables the defendant "to be the arbitrator of [its] own cause," in violation of New York public policy. The plaintiff also contends that the clause is invalid because it vests the defendant with "sole control" over the arbitration process. We view this second contention as a claim of substantive unconscionability. See *Cheshire Mortgage Service, Inc.* v. *Montes*, 223 Conn. 80, 89, 612 A.2d 1130 (1992) ("[t]he basic test is whether . . . the clauses involved are so one-sided as to be unconscionable" [internal quotation marks omitted]); *Gillman* v. *Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10, 534 N.E.2d 824, 537 N.Y.S.2d 787 (1988) (contract is unconscionable when there is "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party" [internal quotation marks omitted]). Accordingly, we turn to the relevant state law of contracts to determine the validity of the arbitration agreement. Because the parties have agreed that New York law controls the partnership agreement; see footnote 7 of this opinion; we apply the law of that state.[11]

---

[10] We note that the arbitration clause in the present case does not concern the "tripartite" method of arbitration, frequently utilized in collective bargaining agreements, wherein the arbitration panel is composed of "one arbitrator who represents management, one who represents the union, and the third, a neutral, who is selected either by the parties directly or by their representative arbitrators." F. Elkouri & E. Elkouri, How Arbitration Works (A. Ruben ed., 6th Ed. 2003) p. 142.

[11] In applying state contract law principles to determine the enforceability of the arbitration clause, we note that the federal cases relied on by the Appellate Court are inapplicable to that issue. In *Rosenberg* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, supra, 170 F.3d 14–16, the court rejected the structural bias test in determining whether the underlying arbitration procedure was adequate to allow the plaintiff to vindicate her statutory rights under Title VII of the Civil Rights Act of 1964; 42 U.S.C. § 2000e-2 (a) (1994); and the Age Discrimination in Employment Act of 1967. 29 U.S.C. § 621 et seq. (1994). Because *"Rosenberg* was concerned only with compel-

## II

Having concluded that New York law must govern our analysis of whether the parties entered into a contractually valid arbitration agreement, we turn now to the plaintiff's claims. The plaintiff first claims, essentially, that the arbitration clause is illusory under New York law, and violates the public policy of that state, because it authorizes an arbitration panel consisting entirely of partners and directors of the defendant and, therefore, allows the defendant to act as the judge of its own case. The plaintiff's second claim is that the terms of § 14.8 are "grossly unfair and one-sided" because they give the defendant exclusive control over the selection of arbitrators and the arbitral process. We address these two claims in turn.

### A

The plaintiff first claims, essentially, that the arbitration agreement is illusory and contrary to public policy because it allows the defendant to act as the judge of its own case. We disagree.

"Considerable authority . . . supports the validity and enforceability of alternative dispute resolution mechanisms, which reflect the informed negotiation and endorsement of parties. It is firmly established that the public policy of New York State favors and encourages arbitration and alternative dispute resolutions

---

ling arbitration in the context of federal employment discrimination claims"; *Paul Revere Variable Annuity Ins. Co.* v. *Zang*, 248 F.3d 1, 10 (1st Cir. 2001); it does not apply to cases, such as the present case, involving "a straightforward contract dispute that does not raise the public policy concerns addressed by statutory bars to employment discrimination." Id.

*Woods* v. *Saturn Distribution Corp.*, supra, 78 F.3d 426–29, similarly does not advance the analysis. That case concerned postarbitration review of an arbitrator's award under §§ 9 and 10 of the arbitration act. Id., 425–26; see 9 U.S.C. §§ 9 and 10 (a) (2). The issue in the present case is whether the parties executed a valid and enforceable agreement to arbitrate, an issue to be resolved under general principles of state contract law.

. . . . These mechanisms are well recognized as an effective and expeditious means of resolving disputes between willing parties desirous of avoiding the expense and delay frequently attendant to the judicial process . . . . Thus, [i]t has long been the policy of the law to interfere as little as possible with the freedom of consenting parties to achieve that objective . . . ." (Citations omitted; internal quotation marks omitted.) *Westinghouse Electric Corp.* v. *New York City Transit Authority*, 82 N.Y.2d 47, 53–54, 623 N.E.2d 531, 603 N.Y.S.2d 404 (1993).

"Central to that freedom is the recognized right of the parties, subject to limited exceptions . . . to name those who are to be the arbitrators, or, if the parties prefer not to name them directly, to choose the way in which they are to be selected. In fealty to that principle, we have made clear that [t]he spirit of the arbitration law being the fuller effectuation of contractual rights, the method for selecting arbitrators and the composition of the arbitral tribunal have been left to the contract of the parties." (Citations omitted; internal quotation marks omitted.) *In the Matter of Siegel*, 40 N.Y.2d 687, 689, 358 N.E.2d 484, 389 N.Y.S.2d 800 (1976). "Therefore, strange as it may seem to those steeped in the proscriptions of legal and judicial ethics, a fully known relationship between an arbitrator and a party, including one as close as employer and employee . . . or attorney and client . . . will not in and of itself disqualify the designee." (Citations omitted.) Id., 690, citing *In the Matter of Astoria Medical Group*, supra, 11 N.Y.2d 136, and *In the Matter of Karpinecz*, 14 App. Div. 2d 569, 218 N.Y.S.2d 88 (1961).

The freedom of parties to a contract to agree upon an arbitrator of their choosing is limited, however, by the "well recognized principle of 'natural justice' . . . that a man may not be a judge in his own cause." *In the Matter of Cross & Brown Co.*, 4 App. Div. 2d 501,

502, 167 N.Y.S.2d 573 (1957); see also *Ellis* v. *Emhart Mfg. Co.*, 150 Conn. 501, 505, 191 A.2d 546 (1963) (citing *In the Matter of Cross & Brown Co.* for principle that "a man ought not to be a judge in his own case"). "Irrespective of any proof of actual bias or prejudice, the law presumes that a party to a dispute cannot have that disinterestedness and impartiality necessary to act in a judicial or quasi-judicial capacity regarding that controversy. This absolute disqualification to act rests upon sound public policy. Any other rule would be repugnant to a proper sense of justice." *In the Matter of Cross & Brown Co.*, supra, 502. It is essentially on this basis that the plaintiff makes his claim.

In *In the Matter of Cross & Brown Co.*, the Appellate Division of the New York Supreme Court invalidated an arbitration clause, included within an employment contract, that named the employer's board of directors as the sole arbitrator of all disputes. In concluding that arbitration to the board of directors was tantamount to arbitration before the employer itself, the court stated: "We brush aside any metaphysical subtleties about corporate personality and view the agreement as one in which one of the parties is named as arbitrator. Unless we close our eyes to realities, the agreement here becomes, not a contract to arbitrate, but an engagement to capitulate." Id. Therefore, the court concluded that "no party to a contract, *or someone so identified with the party as to be in fact, even though not in name, the party*, can be designated as an arbitrator to decide disputes under it. Apart from outraging public policy, such an agreement is illusory; for while in form it provides for arbitration, in substance it yields the power to an adverse party to decide disputes under the contract." (Emphasis added.) Id., 503.

Since 1957, however, the New York Court of Appeals repeatedly has stated that, "even in cases where the contract expressly designated a *single* arbitrator who

was employed by one of the parties or intimately connected with him, the courts have refused to disqualify the arbitrator on the ground of either interest or partiality . . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Westinghouse Electric Corp.* v. *New York City Transit Authority*, supra, 82 N.Y.2d 54; see also *In the Matter of Siegel*, supra, 40 N.Y.2d 690; *In the Matter of Astoria Medical Group*, supra, 11 N.Y.2d 136. Therefore, although the New York Court of Appeals never has addressed *In the Matter of Cross & Brown Co.* directly, it is clear that that case establishes only a limited exception to the general rule that consenting parties to a contract are free to agree upon an arbitrator of their choosing.

In *In the Matter of Siegel*, supra, 40 N.Y.2d 691, the New York Court of Appeals upheld the enforceability of a commercial arbitration clause that named an attorney and an accountant of one of the parties as the sole arbitrators. In concluding that there was no basis upon which to disqualify the arbitrators in advance of arbitration, the court noted that both arbitrators had rendered professional services to the party for approximately fifteen years. Id., 688. In addition, the court noted that the attorney was "the chief draftsman" of the underlying stock purchase agreement, and that the accountant was named as escrowee by that agreement. Id., 691. Nevertheless, because these facts were fully known to both parties at the time that they entered into the agreement, the court refused to intervene. Id.

In *Westinghouse Electric Corp.* v. *New York City Transit Authority*, supra, 82 N.Y.2d 50, the New York Court of Appeals held that New York public policy does not prohibit "an alternative dispute resolution . . . provision that authorizes an employee of a party . . . to a contract dispute, where such employee is personally involved in the dispute, to make conclusive, final, and binding decisions on all questions arising under the

contract . . . ." (Citation omitted; internal quotation marks omitted.) *Westinghouse Electric Corp.* concerned a public works construction contract between a general contractor and a municipal transit authority. The contract contained an alternative dispute resolution provision requiring that all disputes arising from the contract be submitted for binding resolution by the superintendent of the transit authority. Id., 51. In this case, the superintendent was also the transit authority's chief electrical officer. Id. The underlying dispute arose when the superintendent, acting in his capacity as chief electrical officer, ordered the contractor to discontinue its work under the contract and recommended to the transit authority that it hold the contractor in default on that contract. Id., 51–52. On the basis of that recommendation, the transit authority held the contractor in default. The contractor thereafter challenged that decision through the channels provided by the alternative dispute resolution clause. The superintendent, acting in his capacity as the sole adjudicator under that clause, rejected the contractor's claims. Id., 52.

The contractor thereafter brought a diversity action in federal District Court for breach and rescission of the contract, claiming that the alternative dispute resolution clause was void and unenforceable because it violated New York public policy. Id. The District Court disagreed, and upheld the enforceability of the clause. *Westinghouse Electric Corp.* v. *New York City Transit Authority*, 794 F. Sup. 79, 83 (S.D.N.Y. 1991), aff'd, 14 F.3d 818 (2d Cir. 1994). The contractor then appealed to the United States Court of Appeals for the Second Circuit and, relying on *In the Matter of Cross & Brown Co.*, argued that the alternative dispute resolution clause contravened New York public policy by authorizing an adjudication by a functionary indistinguishable from one of the parties. *Westinghouse Electric Corp.* v. *New York City Transit Authority*, 990 F.2d 76, 79

(2d Cir. 1993). The Second Circuit subsequently certified the issue to the New York Court of Appeals for an articulation of the law and public policy of New York. Id., 80.

The New York Court of Appeals concluded that the alternative dispute resolution clause was enforceable. *Westinghouse Electric Corp.* v. *New York City Transit Authority*, supra, 82 N.Y.2d 54–55. Significantly, the court made no mention of *In the Matter of Cross & Brown Co.* in reaching its conclusion. Rather, the court stated, based upon its earlier decisions in *In the Matter of Siegel* and *In the Matter of Astoria Medical Group*, that the public policy of New York favors and encourages arbitration and other forms of alternative dispute resolution; id., 53; and, therefore, courts must "interfere as little as possible with the freedom of consenting parties to achieve that objective . . . ." (Citations omitted; internal quotation marks omitted.) Id., 54. Applying these principles, the court noted that the contractor had "chose[n], with its business eyes open, to accept the terms, specifications and risk of the bid contract, including the [alternative dispute resolution] clause." Id. Therefore, the court declined to interfere with the operation of the clause because the contractor had chosen to accept the risk "that having an employee of the [transit authority] alone decide the ongoing disputes during the performance of the contract [would lead] ultimately to decisions unfavorable to it."[12] Id.

---

[12] In *Westinghouse Electric Corp.*, the New York Court of Appeals also stated: "Most importantly, we conclude only that public policy has not been transgressed in this case, particularly because of the provision for judicial review of the adjudicator's decision." *Westinghouse Electric Corp.* v. *New York City Transit Authority*, supra, 82 N.Y.2d 54. Specifically, the court noted that the alternative dispute resolution clause expressly provided for judicial review pursuant to article 78 of the New York Civil Rules and Practice Law, which "allows broader review than the usual and stricter standards of arbitration award review in article 75." Id., 55; see also N.Y. C.P.L.R. §§ 7511 and 7803 (McKinney 1992). Therefore, the plaintiff asserts that *Westinghouse Electric Corp.* is inapplicable because "it involved an [alternative dispute resolution] clause that provided for broader judicial review than allowed for arbitration." We disagree with this assertion.

Since 1993, when *Westinghouse Electric Corp.* was decided by the New York Court of Appeals, the New York appellate courts repeatedly have upheld the enforceability of alternative dispute resolution clauses that authorize adjudication by employees and other representatives of a party to the underlying dispute. See, e.g., *Yonkers Contracting Co.* v. *Port Authority Trans-Hudson Corp.*, 87 N.Y.2d 927, 930, 663 N.E.2d 907, 640 N.Y.S.2d 866 (1996) (chief engineer of transit authority); *In the Matter of Weeks Marine, Inc.*, 291 App. Div. 2d 277, 278, 737 N.Y.S.2d 92 (2002) (agency head and comptroller), appeal denied, 99 N.Y.2d 505, 785 N.E.2d 733, 755 N.Y.S.2d 711 (2003); *Laquila Construction, Inc.* v. *New York City Transit Authority*, 282 App. Div. 2d 331, 332, 723 N.Y.S.2d 464 (2001) (chief engineer of transit authority), appeal denied, 96 N.Y.2d 721, 759 N.E.2d 372, 733 N.Y.S.2d 373 (2001). In *Laquila Construction, Inc.*, the only recent New York case to reference *In the Matter of Cross & Brown Co.*, the Appellate Division reversed the judgment of the trial court invalidating an alternative dispute resolution clause similar to the one at issue in *Westinghouse Electric Corp.* The court expressly noted the impact of the *Westinghouse Electric Corp.* decision: "While the [trial] court's

Although the court in that case noted that the alternative dispute resolution clause was "particularly" enforceable because it allowed broader judicial review than the standard generally applied to arbitration clauses, a close reading of that case shows that its holding was not predicated on judicial review. *Westinghouse Electric Corp.* v. *New York City Transit Authority*, supra, 82 N.Y.2d 54–55. Indeed, in *Yonkers Contracting Co.* v. *Port Authority Trans-Hudson Corp.*, 87 N.Y.2d 927, 930, 663 N.E.2d 907, 640 N.Y.S.2d 866 (1996), the New York Court of Appeals, applying *Westinghouse Electric Corp.*, upheld the enforceability of an alternative dispute resolution clause that failed to specify the standard of judicial review. Moreover, a review of decisions by the Appellate Division of the New York Supreme Court, applying *Westinghouse Electric Corp.* to arbitration clauses, indicates that New York courts do not view judicial review as the determinative factor in that case. See, e.g., *886 Mid-Orange Realty Corp.* v. *Lax*, 288 App. Div. 2d 255, 732 N.Y.S.2d 590 (2001); *Wallkill Industrial Development Agency* v. *Assessor*, 286 App. Div. 2d 338, 728 N.Y.S.2d 683 (2001).

decade-old decision . . . is understandable in terms of the then-controlling precedent, it has been clear since at least 1993 that the contract clause providing for dispute resolution by [a party's] Chief Engineer is not against public policy, [and] is enforceable . . . compare *[In the Matter of Cross & Brown Co.,* supra, 4 App. Div. 2d 503] [party to contract cannot be arbitrator to resolve contract disputes] with *Westinghouse [Electric] Corp.* v. *New York City [Transit Authority],* [supra, 82 N.Y.2d 54] [engineer review of contract disputes with circumscribed judicial review consistent with public policy] . . . ." *Laquila Construction, Inc.* v. *New York City Transit Authority,* supra, 332.

Even considering the concerns raised by the Appellate Division in *In the Matter of Cross & Brown Co.,* we nevertheless conclude that the arbitration clause in the present case is neither illusory nor contrary to New York public policy. As we previously have stated, the court in that case prohibited contractual provisions that name, as an arbitrator, either a party to the underlying contract or "someone so identified with the party as to be in fact, even though not in name, the party . . . ." *In the Matter of Cross & Brown Co.,* supra, 4 App. Div. 2d 503. First, it is clear that the panel provided for by the arbitration clause in the present case is not a "party" to the dispute between the plaintiff and the defendant. Although we recognize that each *individual* partner is a party to the partnership agreement,[13] it is clear that, in the present case, the plaintiff is asserting claims against *the partnership,* and not against its partners in their individual capacities. In other words, there are

---

[13] The initial paragraph of the partnership agreement provides in relevant part: "This Partnership Agreement is made as of the 1st day of November, 1997 . . . *among the Partners* of BDO Seidman, LLP, a limited liability partnership registered under the laws of the State of New York . . . . *Said Partners* hereby adopt the following Partnership Agreement applicable to periods from and after the effective date." (Emphasis added.)

only two parties to the underlying dispute in this case: the plaintiff and the defendant. Therefore, our focus is on whether the five partners selected to serve on the arbitration panel, acting in their *individual* capacities, are equivalent to the partnership with regard to the underlying dispute.

Under the terms of the partnership agreement, none of the directors or other partners, *acting individually*, can take any action to assert the partnership's rights under that agreement. Specifically, § 2.6 of the partnership agreement vests the board of directors with the sole discretion concerning "[a]ll matters of Partnership policy, administration, operation, action or inaction," including the admission of new partners, allocation of income to the partners and termination of a partner's interest. Section 2.8 of the partnership agreement makes clear, however, that the board of directors cannot take any such action without a vote, and further, that a vote cannot be had unless a quorum of three quarters of the total number of directors are present. Therefore, because § 2.1 of the partnership agreement requires a minimum of nine directors, the quorum requirement of § 2.8 mandates that at least seven directors must be present in order for a proposed action to even go to a vote. In other words, the two directors named to the arbitration panel could not, by themselves, exercise the partnership's rights under the partnership agreement. Significantly, the only member of the board of directors who *could* exercise the partnership's rights is the chairman and chief executive partner, who is precluded by the arbitration clause from serving on the arbitration panel. Moreover, the partners who are not members of the board of directors have no authority whatsoever, either individually or collectively, to exercise the partnership's rights under the partnership

agreement.[14] Therefore, because the arbitration panel will consist of *individual* partners who cannot, by themselves, exercise the partnership's rights under the partnership agreement, those arbitrators do not share the same legal identity as the partnership for the purposes of the partnership agreement.[15] Cf. *In the Matter of Cross & Brown Co.*, supra, 4 App. Div. 2d 501 (arbitration clause authorized "arbitration to the Board of Directors" of employer, in its entirety [internal quotation marks omitted]).

Second, we cannot say that the directors and other partners who actually will serve on the arbitration panel, and who have yet to be selected, are "so identified with the [partnership] as to be in fact, even though not in name, the [partnership] . . . ." Id., 503. The plaintiff first contends that the partners are "inseparably tied" to the partnership because they share in the income, profits and losses of the partnership, pursuant to §§ 4.1 and 5.1 of the partnership agreement, and therefore "will directly share in the gain (or loss) associated with the transaction on which they sit as judge . . . ." The plaintiff asserts, as an example, that were he to prevail on his contractual claim for $300,000, each of the 250

[14] It is noteworthy that, under § 14.10 of the partnership agreement, partners are limited in their ability to bind the partnership in dealings with persons outside the partnership, without authorization from the board of directors or the chairman and chief executive partner.

[15] Our conclusion, that the individual partners are not "parties" to the dispute between the plaintiff and the defendant, should not be construed, in any way, as limiting or commenting upon the well established principle of New York partnership law that "[a] partnership is generally not a separate entity existing independently of the persons who *control* it . . . ." (Citations omitted; emphasis added.) *Dembitzer* v. *Chera*, 285 App. Div. 2d 525, 526, 728 N.Y.S.2d 78 (2001); see also *Williams* v. *Hartshorn*, 296 N.Y. 49, 51, 69 N.E.2d 557 (1946) ("in the absence of . . . legislative treatment, a partnership is not to be regarded as a separate entity distinct from the persons who compose it"). This general principle is inapplicable in the present case, however, in light of the partnership agreement executed by the parties, which clearly reflects their understanding that the individual partners and directors named to the arbitration panel do not *control* the partnership.

partners of the partnership would bear an average loss of $1200. Even if we were to assume that this is true, although we agree that $1200 is not an insignificant sum of money, we cannot say that it constitutes so substantial an interest that the law should presume, in advance of arbitration, that the partners acting as arbitrators "cannot have [the] disinterestedness and impartiality necessary to act in a judicial or quasi-judicial capacity regarding [the] controversy." *In the Matter of Cross & Brown Co.*, supra, 4 App. Div. 2d 502. Moreover, "[a]n interest in the dispute . . . if known to the parties to the agreement when the arbitrator is chosen . . . will not disqualify the arbitrator from acting." Id. The plaintiff's next assertion, that each partner's judgment will be tainted by fear of reprisal from the board of directors, similarly lacks weight. Although it is conceivable that a partner serving on the arbitration panel might be concerned about how a decision that is adverse to the partnership could affect his or her future with the partnership, such concerns are no different than those held by an employee adjudicating a dispute in which the employer is a party. As we previously have stated, it is well settled under New York law that an employee is not precluded from arbitrating disputes when his or her employer is one of the parties. See *Westinghouse Electric Corp.* v. *New York City Transit Authority*, supra, 82 N.Y.2d 53; *In the Matter of Siegel*, supra, 40 N.Y.2d 690. We fail to see why the rule should be any different when a partner is named as arbitrator, particularly when, as here, the partnership agreement, in § 11.4, provides that a partner's interest may be terminated only "for cause," and then only by a supermajority of 75 percent of the board of directors.

Finally, the plaintiff claims that the partners cannot serve as arbitrators because, under New York law, partners owe fiduciary duties to each other and, by extension, to the partnership. See *Graubard Mollen*

*Dannett & Horowitz* v. *Moskovitz*, 86 N.Y.2d 112, 118, 653 N.E.2d 1179, 629 N.Y.S.2d 1009 (1995). As we previously have stated, however, New York courts have permitted attorneys to serve as arbitrators over disputes in which one of their clients was a party, despite the fact that attorneys clearly owe fiduciary duties to their clients under New York law. See *In the Matter of Siegel*, supra, 40 N.Y.2d 691; *In the Matter of Sociedad Maritima San Nicolas, S.A.*, 21 App. Div. 2d 43, 44–45, 248 N.Y.S.2d 143, appeal denied, 14 N.Y.2d 485 (1964); see also *Graubard Mollen Dannett & Horowitz* v. *Moskovitz*, supra, 118 ("an attorney stands in a fiduciary relation to the client"). Moreover, we note that the arbitration clause in the present case mandates that none of the arbitrators has any involvement in the underlying dispute, even though such involvement did not disqualify the arbitrator in *Westinghouse Electric Corp.* Accordingly, because the arbitration clause does not name an arbitrator who is either a party to the underlying contract dispute, or someone so identified with the party as to effectively be that party, we conclude that the arbitration clause is neither illusory under New York law nor contrary to the public policy of that state.[16]

---

[16] We note that the plaintiff has pointed us to a case from another jurisdiction, applying New York law, that invalidated a similar arbitration clause from one of the defendant's previous partnership agreements. See *BDO Seidman* v. *Miller*, 949 S.W.2d 858, 861 (Tex. App. 1997) (invalidating arbitration clause under *In the Matter of Cross & Brown Co.* because "[t]he five arbitrators are in fact [the partnership] itself"). The plaintiff also relies on an unpublished Massachusetts trial court decision, which also invalidated a similar arbitration clause under the authority of *In the Matter of Cross & Brown Co.* Because we conclude that the arbitration clause in the present case is enforceable under New York law, we are not persuaded by those cases from other jurisdictions that have reached a contrary result. Moreover, we note that the defendant has pointed us to five unreported cases—one from a New York state trial court—that have upheld the enforceability of arbitration clauses from the defendant's partnership agreements that are similar to the one in this case. Finally, to the extent that other cases, cited by the plaintiff, from courts outside of New York, have interpreted New York law in a manner that is inconsistent with our interpretation in the

B

The plaintiff next claims that the terms of the arbitration clause are "grossly unfair and one-sided" because they give the defendant exclusive control over selection of the arbitration panel and the arbitral process.[17] We view this contention as, essentially, a claim that the arbitration clause is substantively unconscionable. We disagree.

"The doctrine of unconscionability contains both substantive and procedural aspects, and whether a contract or clause is unconscionable is to be decided by the court against the background of the contract's commercial setting, purpose and effect . . . ." (Citation omitted.) *Sablosky* v. *Edward S. Gordon Co.*, 73 N.Y.2d 133, 138, 535 N.E.2d 643, 538 N.Y.S.2d 513 (1989). "A determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made—i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party . . . ." (Citation omitted; internal quotation marks omitted.) *Gill-*

present case, we find those cases unpersuasive. See, e.g., *Graham* v. *Scissor-Tail, Inc.*, 28 Cal. 3d 807, 823–27, 623 P.2d 165, 171 Cal. Rptr. 604 (1981) (interpreting and applying *In the Matter of Cross & Brown Co.* as statement of New York law).

[17] The plaintiff further asserts that, "in order to continue to work and be paid for work he had done," he was required to sign a termination agreement "that made reference to an internal grievance procedure to which he was formerly subject as a partner." In other words, the plaintiff claims that he is *now* in the position of an "employee," forced to arbitrate under terms set forth in the partnership agreement. The plaintiff does not, however, dispute the trial court's determination that the arbitration clause of the partnership agreement had been incorporated by reference in the termination agreement. He also does not dispute that the arbitration clause expressly applies to "[a]ny controversy or dispute relating to . . . the Partnership and its affairs . . . ." Therefore, we are not persuaded that the plaintiff's status as a *former* partner somehow could reduce the enforceability of the arbitration clause in the partnership agreement.

*man* v. *Chase Manhattan Bank, N.A.*, supra, 73 N.Y.2d 10.

In the present case, the plaintiff makes no claim that the partnership agreement is a contract of adhesion or that it is the result of procedural unconscionability in the process of contract formation. See *Sablosky* v. *Edward S. Gordon Co.*, supra, 73 N.Y.2d 139 ("claims [of procedural unconscionability] are judged by whether the party seeking to enforce the contract has used high pressure tactics or deceptive language in the contract and whether there is inequality of bargaining power between the parties"). Specifically, the plaintiff does not claim that the contract language is in any way deceptive, or that the defendant used high pressure tactics in the formation of the contract. Moreover, as the plaintiff acknowledges in his brief to this court, he is not an unsophisticated party—to the contrary, the plaintiff is a well educated accountant, a factor that weighs against him. Compare *Morris* v. *Snappy Car Rental, Inc.*, 84 N.Y.2d 21, 30, 637 N.E.2d 253, 614 N.Y.S.2d 362 (1994) (contract not procedurally unconscionable when party was high school graduate with some college education, and did not claim she was victim of deceptive or high pressure tactics) with *Currie* v. *Three Guys Pizzeria, Inc.*, 207 App. Div. 2d 578, 580, 615 N.Y.S.2d 494 (1994) (claim that party to contract was "unsophisticated, minimally educated and had little experience in business matters" raised genuine issue of whether contract was procedurally unconscionable). Accordingly, we conclude that the partnership agreement was neither adhesive nor procedurally unconscionable in its formation.

Nor is the arbitration clause so unreasonable as to render it unenforceable solely on the ground of substantive unconscionability. "While determinations of unconscionability are ordinarily based on the court's conclusion that both the procedural and substantive

components are present . . . there have been exceptional cases where a provision of the contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone . . . ." (Citations omitted.) *Gillman* v. *Chase Manhattan Bank, N.A.*, supra, 73 N.Y.2d 12; see also *State* v. *Wolowitz*, 96 App. Div. 2d 47, 68, 468 N.Y.S.2d 131 (1983) ("procedural and substantive unconscionability operate on a 'sliding scale'; the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa"). In the present case, the terms of the arbitration clause are not so imbalanced as to require its invalidation. Specifically, the clause expressly requires that the arbitrators "shall be mutually agreed to" by the board of directors and the parties to the dispute. As an additional safeguard, the arbitration clause further provides that "no member of the panel shall be from an office in which any complaining Partner was located at the time of the filing of the complaint, nor be otherwise involved in the controversy or dispute." Therefore, we cannot say that the arbitration clause is so imbalanced in the defendant's favor as to require its invalidation.

The plaintiff contends, nevertheless, that the arbitration clause is unenforceable because it vests the board of directors of the defendant with exclusive control over the arbitral procedures. Specifically, the plaintiff points to language in the arbitration clause providing that "[t]he conduct of the arbitration shall be in accordance with such procedures as the Board of Directors adopts and communicates to the Partners." We do not believe that this express language of the arbitration clause, alone, is so imbalanced in the defendant's favor as to render the clause substantively unconscionable and to require this court to interfere with the freely made agreement of the parties. Cf. *Hooters of America, Inc.* v. *Phillips*, supra, 173 F.3d 939 (unfair arbitration

rules provided employer with exclusive right to modify rules " 'in whole or in part,' whenever it wishe[d] and 'without notice' to the employee").[18] Accordingly, we conclude that the arbitration clause is not unconscionable as a matter of law.

In concluding that the arbitration clause in the partnership agreement executed by the plaintiff and the defendant is both valid and enforceable, we note, however, that our conclusion does not relieve the defendant of its contractual obligation to provide the plaintiff with an adequately fair and impartial arbitral forum. If, in practice, the requisite standard of impartiality proves

[18] The plaintiff's reliance on *Hooters of America, Inc.* v. *Phillips,* supra, 173 F.3d 938–40 and *Penn* v. *Ryan's Steakhouses, Inc.,* 95 F. Sup. 2d 940 (N.D. Ind. 2000), aff'd, 269 F.3d 753 (7th Cir. 2001), is misplaced. First, both of those cases involved plaintiffs who were not financial professionals and, therefore, presumably less sophisticated in business matters than the plaintiff in the present case.

Second, and more important, neither of those cases concerned an arbitration clause that was as detailed as the one in this case. In *Hooters of America, Inc.,* the clause provided for alternative dispute resolution pursuant to rules "promulgated by the company from time to time . . . ." (Internal quotation marks omitted.) *Hooters of America, Inc.* v. *Phillips,* supra, 173 F.3d 936. Pursuant to this language, the employer promulgated rules that were biased toward itself. Consequently, the court concluded that the employer had materially breached its contractual obligation to promulgate arbitration rules, and thus defeated the object of the contracting parties. Id., 940. In the present case, by contrast, the plaintiff does not contend that the defendant materially has breached the arbitration clause. The plaintiff contends, instead, that the express terms of the arbitration clause, to which he knowingly agreed, are unenforceable. Similarly, the District Court in *Penn* concluded that the employer and a third party provider of arbitration services both had breached their contractual duties to provide an unbiased arbitral panel. *Penn* v. *Ryan's Family Steakhouses, Inc.,* supra, 95 F. Sup. 2d 949. On appeal, the United States Court of Appeals for the Seventh Circuit affirmed the decision of the District Court, albeit on narrower grounds. Specifically, the Seventh Circuit concluded, in light of the unique nature of the third party arbitration agreement in that case, that the agreement was unreasonably vague and void for want of mutuality of obligation. *Penn* v. *Ryan's Family Steak Houses, Inc.,* 269 F.3d 753, 760–61 (7th Cir. 2001). Accordingly, the line of *Penn* cases and *Hooters of America, Inc.,* are of minimal value to our inquiry in the present case.

not to have been met, the plaintiff is not without recourse. "Needless to say, if the arbitrators, in the actual execution of their office, prove to have been unfair or unfaithful to their obligations, their award is not impervious to judicial action . . . ." (Citations omitted.) *In the Matter of Siegel*, supra, 40 N.Y.2d 691. Accordingly, we see no reason to interfere with the enforceable and validly executed agreement of the parties.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.